IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH HENRY BROWN, TDCJ No. 1906549, | § § § | |
| Petitioner, | § § | |
| V. | § § | No. 3:20-cv-773-N-BN |
| DIRECTOR, TDCJ-CID, | § § § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Joseph Henry Brown, a Texas prisoner, "was convicted by a jury of burglary of a habitation. He pleaded true to the indictment's two enhancement paragraphs that alleged prior felony convictions, which enhanced the punishment range to twenty-five to ninety-nine years or life in prison. *See* TEX. PENAL CODE ANN. § 12.42(d). The jury assessed punishment at fifty years in prison." *Brown v. State*, No. 05-14-00082-CR, 2015 WL 1811934 (Tex. App. – Dallas Apr. 20, 2015, no pet.), *aff'g State v. Brown*, No. F13-53946-W (363d Jud. Dist. Ct., Dallas Cnty., Tex.); Dkt. No. 12-1, Ex. A. This criminal judgment was affirmed on appeal. *See generally Brown*, 2015 WL 1811934. And Brown did not petition the Texas Court of Criminal Appeals (CCA) for discretionary review. *See* Dkt. No. 3 at 3; Dkt. No. 12-1, Exs. F, G.

But Brown did seek state habeas relief. *See Ex parte Brown*, W13-53946-W(A) (363d Jud. Dist. Ct., Dallas Cnty., Tex.); Dkt. No. 12-1, Ex. B. And the CCA denied his initial state habeas application without written order. *See Ex parte Brown*, WR-47,126-03 (Tex. Crim. App. Feb. 17, 2016); Dkt. No. 12, Ex. C.

He next filed a second state habeas application, in 2018, arguing that newly discovered evidence shows that he is actually innocent. *See Ex parte Brown*, W13-53946-W(B) (363d Jud. Dist. Ct., Dallas Cnty., Tex.); Dkt. No. 12-1, Ex. D. And the CCA dismissed this application as a subsequent writ. *See Ex parte Brown*, WR-47,126-04 (Tex. Crim. App. Mar. 11, 2020) (citing TEX. CODE CRIM. PROC. art. 11.07, § 4(a)-(c)); Dkt. No. 12-1, Ex. E.

Brown then turned to the federal courts, filing his first application for a writ of habeas corpus under 28 U.S.C. § 2254 *pro se* on March 30, 2020, the date on which he certifies that he placed it in the prison mailing system. *See* Dkt. No. 3 at 10; RULE 3(d), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.").

Brown argues that his Section 2254 application is timely because of newly discovered evidence and attaches to it a September 18, 2018 letter from the Texas DNA Mixture Review Project, indicating that "[n]o DNA testing was done in [his] case, or if there were DNA results, those results did not connect [him] to the evidence." Dkt. No. 3 at 9, 11-13.

This petition has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey. The State filed a court-

ordered response, arguing that the application is time barred. *See* Dkt. No. 12. And Brown replied. *See* Dkt. No. 15.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year statute of limitations for federal habeas proceedings brought under 28 U.S.C. § 2254. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996, Pub. L. 104-132, 110 Stat. 1214 (1996). The limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the limitations period. *See id.* § 2244(d)(2).

The one-year limitations period is also subject to equitable tolling – "a discretionary doctrine that turns on the facts and circumstances of a particular case," *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), and only applies in "rare and

exceptional circumstances," *United States v. Riggs,* 314 F.3d 796, 800 n.9 (5th Cir. 2002) (citing *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998)). "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida,* 560 U.S. 631, 649 (2010)).

Taking the second prong first, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009) (per curiam) (citation omitted). This "prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [the litigant's] control." *Menominee Indian Tribe*, 577 U.S. at 257.[1]

But "'[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.' What a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall." *Jackson v. Davis*, 933 F.3d 408, 411 (5th

---

[1] *See, e.g.*, *Farmer v. D&O Contractors*, 640 F. App'x 302, 307 (5th Cir. 2016) (per curiam) (holding that because "the FBI did not actually prevent Farmer or any other Plaintiff from filing suit" but instead "advised Farmer that filing suit would have been against the FBI's interest" and "that the RICO claims could be filed after the investigation concluded," "[a]ny obstacle to suit was ... the product of Farmer's mistaken reliance on the FBI, and a party's mistaken belief is not an extraordinary circumstance" (citation omitted)).

Cir. 2019) (quoting *Holland*, 560 U.S. at 653; footnote omitted).

And, most applicable here, a showing of "actual innocence" can also overcome AEDPA's statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But the actual innocence gateway is only available to a petitioner who presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

That is, the petitioner's new, reliable evidence must be enough to persuade the Court that "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at 386 (quoting *Schlup*, 513 U.S. at 329); *see also Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992) ("The Supreme Court has made clear that the term 'actual innocence' means *factual*, as opposed to *legal*, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey [v. Zant*, 499 U.S. 467 (1991)], means that the person did not commit the crime." (footnotes omitted)); *Acker v. Davis*, 693 F. App'x 384, 392-93 (5th Cir 2017) (per curiam) ("Successful gateway claims of actual innocence are 'extremely rare,' and relief is available only in the 'extraordinary case' where there was 'manifest injustice.' *Schlup*, 513 U.S. at 324, 327. When considering a gateway claim of actual innocence, the district court must consider all of the evidence, 'old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.' *House v. Bell*, 547 U.S. 518, 538 (2006)

(internal quotation marks and citations omitted). 'Based on this total record, the court must make "a probabilistic determination about what reasonable, properly instructed jurors would do."' *Id.* (quoting *Schlup*, 513 U.S. at 329). 'The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors.' *Id.*" (citations modified)).

The timeliness of most Section 2254 applications is determined under Subsection A, based on the date on which the state criminal judgment became final. Such a judgment becomes final under AEDPA "when there is no more 'availability of direct appeal to the state courts.'" *Frosch v. Thaler*, No. 2:12-cv-231, 2013 WL 271423, at *1 (N.D. Tex. Jan. 3, 2013) (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009)), *rec. adopted*, 2013 WL 271446 (N.D. Tex. Jan. 24, 2013).

Brown did not file a petition for discretionary review (PDR). But he did obtain an extension of time from the CCA to file one, to July 20, 2015. *See Brown v. State*, PD-0607-15 (Tex. Crim. App. May 22, 2015); Dkt. No. 12-1, Ex. F. So the conviction that Brown now challenges became final under the AEDPA "upon the expiration of the time for seeking further review through the filing of a PDR," *Phillips v. Quarterman*, No. 3:09-cv-1131-B, 2009 WL 1974302, at *2 (N.D. Tex. July 7, 2009) (citing *Roberts v. Cockrell*, 319 F.3d 690, 692 (5th Cir. 2003)), "which, at the latest, was the CCA-extended deadline to file the PDR," *Salinas-Tinoco v. Davis*, No. 3:18-cv-1781-G-BN, 2018 WL 3979865, at *3 (N.D. Tex. July 25, 2018) (collecting cases), *rec. accepted*, 2018 WL 3973507 (N.D. Tex. Aug. 20, 2018).

Brown may have then filed his first state habeas application within one year from that date. But, even using the CCA's denial of this application on February 17, 2016 as the statutorily-tolled finality date, Brown's subsequent state habeas petition "was not filed within the one-year period" that commenced on that date, that petition "did not [further] statutorily toll the limitation clock." *Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013) (citing *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (in turn citing 28 U.S.C. § 2244(d)(2))). So Brown's Section 2254 application, filed under the prison mailbox rule on March 30, 2020, was filed more than three years too late when measured under Subsection A. The application is therefore due to be denied as untimely absent statutory or equitable tolling of the limitations period or establishment of actual innocence.

Brown makes no showing as to equitable tolling.

Turning then to "'actual innocence, [it], if proved, serves as a gateway through which a petitioner may pass [even if] the impediment is a procedural bar ... or ... expiration of the statute of limitations.'" *Hancock v. Davis*, 906 F.3d 387, 389 (5th Cir. 2018) (quoting *Perkins*, 569 U.S. at 386). But "a credible gateway 'claim [of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence ... that was not presented at trial.'" *Id.* (quoting *Schlup*, 513 U.S. at 324). "Examples of 'new reliable evidence' are 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Fratta v. Davis*, 889 F.3d 225, 232 (5th Cir. 2018) (quoting *Schlup*, 513 U.S. at 324).

And "'[t]he habeas court must [consider] the petitioner's innocence in light of

all the evidence, including that alleged to have been illegally admitted ... and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial[,' and then] must 'make a probabilistic determination about what reasonable, properly instructed jurors would do' after considering all of the evidence." *Id.* (quoting *Schlup*, 513 U.S. at 328, 329; citation omitted).

As a result, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Perkins*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329).

> The Supreme Court has not explicitly defined what constitutes "new reliable evidence" under the *Schlup* actual-innocence standard.... [And the Fifth Circuit] "has yet to weigh in on the circuit split concerning what constitutes 'new' evidence." *Fratta*, 889 F.3d at 232....
> [But e]vidence does not qualify as "new" under the *Schlup* actual-innocence standard if "it was always within the reach of [petitioner's] personal knowledge or reasonable investigation." *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008). Consequently, though [the Fifth Circuit has] not decided what affirmatively constitutes "new" evidence, [it has] explained what does not.

*Hancock*, 906 F.3d at 389-90 (footnote omitted and citations modified).

The evidence Brown offers, the letter from the Texas DNA Mixture Review Project, explained to Brown that this group is "only investigating cases where there already has been DNA testing that hurt you somehow, either in inducing you to plead guilty or in helping convince a jury of your guilt." Dkt. No. 3 at 13. And the letter concluded that either (1) no DNA testing was done in Brown's case or, if there were DNA results, (2) those results had no connection to him. *See id.* at 12. This language

may be confusing. But its conclusion as to the absence of exculpatory scientific evidence is clearer. And the letter itself does not amount to new reliable evidence that may allow a petitioner to pass through the narrow actual-innocence exception to the AEDPA's statute of limitations.

Brown's assertions as to actual innocence also prevent the Court from finding that his current application may be timely under Subsection D, the factual predicate provision of the statute of limitations, which runs from "the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)).

When considering allegedly new evidence under this subsection, it matters when a habeas petitioner first knew of – or, through due diligence, could have discovered – "the vital or principal facts underlying [the] claims" supported by the "new evidence." *Vega v. Stephens*, No. 3:14-cv-551-P-BK, 2015 WL 4459262, at *3 (N.D. Tex. July 20, 2015) (defining "the factual predicate" as "the vital or principal facts underlying [a petitioner's] claims" (citing *McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007); *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012))); *see also Blackman v. Stephens*, No. 3:13-cv-2073-P-BN, 2016 WL 777695, at *5 (N.D. Tex. Jan. 19, 2016) ("Under Section 2244(d)(1)(D), the applicable date is the date on which vital facts are first discovered, not when evidence to support those facts is first acquired."), *rec. accepted*, 2016 WL 759564 (N.D. Tex. Feb. 26, 2016); *cf. Christian v. Bracy*, No. 2:18-CV-652, 2019 WL 2314631, at *3 (S.D. Ohio May 31, 2019) ("The term 'factual

predicate' in § 2244(d)(1)(D) refers to factual evidence and events, not legal conclusions.").

Brown fails to connect his actual-innocence assertions/evidence to the other substantive claims he makes – denial of due process, ineffective assistance of counsel, "abuse of discretion" by the CCA – to explain when he first knew (or could have known) of the vital facts that supposedly support these claims, to the extent that these claims are reviewable by a federal court. *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001) ("A long line of cases from our circuit dictates that 'infirmities in state habeas proceedings do not constitute grounds for relief in federal court.'" (quoting *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1997); collecting cases)); *see also Perkins*, 569 U.S. at 392 ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993))); *House*, 547 U.S. at 554-55; *Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014); *cf. Schlup*, 513 U.S. at 314 (distinguishing "procedural" claims of innocence, which are based on a separate, underlying claim that a defendant was denied "the panoply of protections afforded to criminal defendants by the Constitution").

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections

within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 24, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE